**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**PAMELA RIDEOUT**                                                    **PLAINTIFF**

**V.**                                                          **NO.: 2:11CV222-MPM-JMV**

**ALLSTATE INSURANCE COMPANY**                              **DEFENDANT**

**<u>ORDER</u>**

This cause comes before the court on defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 [Doc. 82, 83]. The plaintiff has responded in opposition to the motion. Upon due consideration of the memoranda and relevant law, the court is now prepared to rule.

Pamela Rideout is an African American woman who was employed by Allstate. She alleges Allstate discriminated against her on the base of race with respect to compensation, promotion, work assignments, resources, and other adverse terms pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

The plaintiff, Ms. Rideout, was employed by defendant starting in March 2006 as a Market Distribution Associate (MDA). It is alleged Ms. Rideout, who was the only black female MDA in her region, was paid less than the other MDAs employed on or near her hire date. Each new MDA was given resources by Allstate which included: a twenty-four month development plan, home office, cell phone, access to reports, an expense account, and particular assignments among other benefits.

Ms. Rideout claims she was provided with an unofficial, hand-written development plan that only allowed her ten months rather than the twenty-four months to complete. Further, as early as May 14, 2006, Rideout informed her manager at Allstate that her access to essential resources was unreasonably delayed. She was not provided a cell phone until September 2006, a

laptop until March 2007, and was not provided a printer until October 2007. Ms. Rideout also claims she was assigned a market with limited potential and placed in a low-performing agency with numerous personal and financial challenges at a higher percentage than her similarly situated peers. John Meyer, a Caucasian male who managed the Tennessee territory of the Southern Region, allowed Rideout's peers to select the agents for their respective markets, and left the remaining rejected agents for Ms. Rideout according to her complaint.

Ms. Rideout contends Meyer routinely related to her in a dismissive and/or offensive manner and stated she was being "overly anxious" regarding the development plan and assigned market. Plaintiff met with human resource representatives of the defendant in March and June of 2006 to inform them of the racial discrimination she was encountering with Meyer and an incident in which a Caucasian peer referred to another African American as a "big black gorilla." Ms. Rideout states several people laughed at the statement, including the manager, John Meyer.

After discussing the ongoing issues, Rideout noticed a marked increase in hostility from Meyer, and her resources continued to be delayed. Despite not having access to the correct resources, plaintiff met her goals but other Caucasian MDAs did not.

Meyer additionally demanded Ms. Rideout surrender her law license although there was no policy within Allstate which prohibits MDAs from holding a law license. Ms. Rideout offered to suspend her license, but Meyer and the Regional Field Sales Consultant, Carl Tackett, rejected her idea and insisted she surrender her license or face possible termination.

Ms. Rideout met with Mike Brown, the Regional Distribution Leader, in October 2007 to handle her discrimination complaint and her low performance rating despite the fact she met or exceeded all measurable goals. Brown admitted Meyer's actions were wrong and needed to be addressed. Brown amended Rideout's rating and offered her an opportunity to participate in the

Talent Acceleration Program, a program reserved for Allstate's forty most effective employees. Ms. Rideout was accepted into the program and the program required her to work in the corporate office in Northbrook, Illinois for twenty-four months, June 2008 until May 2010.

During the time Ms. Rideout was in the Talent Acceleration Program, she states she was not subject to any racial discrimination.

Ms. Rideout states in February 2010, she was denied the opportunity to be considered for a promotion and the not-posted-position was filled by a less qualified Caucasian male. Further, she was denied the opportunity to be considered for several other regional positions.

In April 2010, Rideout was informed that if she returned to the Southern Region, she would have to take a position in Kentucky, without the benefit of a relocation package. Robert Moseley[1], a human resource representative, informed her she would not need to relocate because the market could be successfully managed remotely, yet plaintiff claims similarly situated white peers were not required to manage their territories from remote locations. Moseley indicated Ms. Rideout could not return to the Memphis market because it could only sustain one Field Sales Leader (FSL). However, plaintiff learned that the Memphis market was split into two markets and the new market that emerged from the split was awarded to a Caucasian male from Florida.

Allstate announced Rideout would return to Memphis as a FSL in May 2010. Ms. Rideout contends however that she believed the Kentucky market was assigned to her and it was not a temporary assignment.[2] Defendant refers the court to a conversation Rideout had with Moseley and Eric Harvey, in which Moseley stated that there "were a lot of moving parts."[3] Plaintiff argues that defendant misrepresents the timing of the plaintiff's notes that relate to the

---

[1] In the complaint, Moseley is spelled two ways: Moseley and Mosely.
[2] Whether the personal notes cited to by counsel prove Rideout knew it was a temporary position or not is best left for the finder of fact.
[3] Defendant states this phone conversation was illegally recorded by the plaintiff using an audio recording device; however that issue is not before this court.

phone conversation and they are in response to her learning that the Kentucky assignment was temporary. Further she argues the telephone conversation and the meaning of Moseley's statement is an issue for the jury.

Despite Ms. Rideout contending she was not happy to move to Chicago due to having a young son, she now contends she wanted to leave Memphis for the Kentucky market, but did not tell Moseley of her preference because "he did not ask… the very market I preferred had been assigned to me… and no indication that knowing my preference would make a difference to the decision…" Further, plaintiff testified she would have left the TAP program early to come back to the Southern Region and "would have came back for anything to be with [her] son."

Rideout learned that the Kentucky position was awarded to a Caucasian male who was provided a relocation package but was later terminated due to his inability to pass the initial background check.

Ms. Rideout was assigned a market in May 2010 that was comprised of sixty percent African American agents[4] and a similarly situated white FSL was awarded a territory with significantly less African American agents.

It is alleged in the complaint that after Rideout filed a formal charge of discrimination with the EEOC in August 2010, Robert Emmich became more openly dismissive and disrespectful of her. Plaintiff uses as an example that Emmich counseled plaintiff about her communication skills, and stated she used too many "big words" that intimidate and confuse people, but rarely challenged Caucasians' communication skills. A Caucasian FSL referenced to plaintiff as a "bitch" during a meeting and Emmich did not admonish the employee after several other FSLs complained to HR. Ms. Rideout filed an internal complaint in November 2010

---

[4] In plaintiff's complaint she states that "African American Agents historically have agencies comprised of African Americans. African Americans historically do not purchase securities which is a large portion of the FSL's goals."

4

regarding the incident because she thought it was unacceptable that the Region's investigation did not find "mal-intent" with this behavior and perceived it as a personal matter.

Plaintiff began reporting to Emmich on January 1, 2011. Emmich disclosed Rideout's confidential performance discussions with her peers but did not disclose this information regarding Rideout's peers to other employees. On February 15, 2011, Moseley investigated Rideout's claims that Emmich's conduct was retaliatory in nature. Moseley acknowledged that Emmich should not have conversed regarding Rideout's development with her peers. Rideout also states Emmich exhibited a tolerance for racially offensive conduct when on June 2, 2011 he excused her peers' behavior because "some people just can't get past skin pigmentation" and later stated that he understood how a recruit would assume she was white because she was "so articulate."[5] Ms. Rideout again met with Moseley to express concerns with Emmich's ability to assess her performance in an unbiased matter. Plaintiff states she was subjected to retaliatory conduct by Emmich and he subjected her to greater scrutiny than her similarly situated Caucasian peers.

After meeting with Moseley and Emmich in May 2011, Rideout experienced additional interference with her market from Emmich, other members of management and other Caucasian FSLs. Ms. Rideout states Emmich routinely avoided meeting with her and her agent, but met with and supported similarly situated Caucasians. Plaintiff reported to Emmich that a high performing agent was violating several policies and procedures and receiving enhanced commissions as a result of his activity. Rideout claims that rather than investigate her concerns, Emmich helped disguise the agent's activity to avoid a corporate security investigation and he

---

[5] The declaration filed by the plaintiff states that it was Walsh who responded with the skin pigmentation remark and later that Emmich admitted an FSL in his territory "couldn't get past skin pigmentation." Regardless, the court notes it was Allstate employees who made such remarks and that management was aware of the remarks.

5

also secretly assisted in the process of removing the agent out of her market by circumventing the policies and procedures.

Ms. Rideout claims the market assigned to her had problems not experienced by other FSLs, and because of her race she was not fairly assigned a market. Instead she contends she was the only FSL required to cross state lines, her market was populated with several defunct agents, she was assigned agents who had already received termination notices, she encountered an agent using a crack cocaine pipe in his office, and she observed a used condom openly displayed on an agent's desk. As a FSL, Rideout's bonuses were tied to the goals of the agents.

Rideout further claims that her market was adjusted in December 2011 to adversely impact her earning potential, and she received an Unsatisfactory Notice after conversations and emails regarding the accuracy of her goals. The instant action was filed on November 16, 2011 and was amended on August 1, 2012. Plaintiff resigned on August 23, 2012, after accepting a job with a company, Jabil, while still employed by Allstate.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a fact issue has been created, courts must view the evidence in the light most favorable to the non-moving party. *See Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.,* 635 F.3d 685, 690 (5th Cir. 2011).The existence of a factual dispute does not preclude summary judgment if the dispute is neither material nor genuine. *Liddell v. Northrop Grumman Shipbuilding, Inc.*, 2011 WL 6781012 (S.D. Miss. Dec. 27, 2011) (citing *Willis v. Roche Biomedical Labs., Inc.,* 61 F. 3d 313, 315 (5th Cir. 1995)). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Rockwell v. Brown,* 664 F.3d 985, 990 (5th Cir.2011).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. *Id*. "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Jordan v. Cleco Corp.*, 2013 WL 673438 (W.D. La. Feb. 22, 2013) (citing *Ramsey v. Henderson,* 286 F.3d 264, 269 (5th Cir.2002)).

Plaintiff did not complain to the EEOC about the incidents between her hire in 2006 and June 2008 until she filed her Charge in August 2010. Defendant argues any events between 2006 and 2008 are non-actionable. As stated in her surreply, plaintiff "includes the facts of her employment prior to 2008 as background and to demonstrate the culture of discrimination that existed in the Southern Region throughout her employment…it is clear that all the actionable conduct occurred in 2008 and later." Therefore, plaintiff's claims arising under her employment until June 2008, need not be addressed under the procedural requirements of Title VII or Section 1981[6], but are hereby waived by plaintiff.[7]

---

[6] *See Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (2004) (Four-year statute of limitation for claims "arising under" federal statutes without a statute of limitations that were enacted after December 1, 1990.

[7] Plaintiff states her "work at the corporate office was without racial incident" and that explains the gap between the two time periods of alleged discrimination. Plaintiff's contention of discrimination is not helped by counsel's "typographical error" in her response brief in which she states "no cause of action arose prior to 2010." Counsel states however it was intended to state "no cause of action arose prior to those alleged in her 2010 EEOC Charge of Discrimination." Further, plaintiff states the facts prior to 2008 are background to demonstrate the culture of discrimination that existed in the Southern Region throughout her employment.

Plaintiff's constructive discharge claim cannot survive summary judgment.[8] Ms. Rideout was employed by Allstate for over six years, and although she complained of racial slurs and unpleasant name calling during her employment, she has failed to demonstrate that the conditions were so intolerable that a reasonable person would have felt compelled to resign. *See McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007). It is clear to the court that the actions of both the employees and managers of Allstate are unbecoming to any professional setting, however they do not rise to the level of constructive discharge in Ms. Rideout's case. Ms. Rideout cites the Unsatisfactory Notification she received after she had begun to search for a new job to bolster the constructive discharge claim, however again this does not rise to the level needed to survive summary judgment.[9] Further, Ms. Rideout negotiated a position with a different company while she was still employed by Allstate and resigned from Allstate knowing she was moving into her new position with Jabil. Therefore there is no actionable claim for back pay, and Ms. Rideout suffered no harm in relation to a constructive discharge claim.

The court considers Rideout's remaining claims based on Title VII and 42 U.S.C. § 1981 under the same rubric of analysis. *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002).

Plaintiff alleges that she was discriminated against based on her race and thus the court turns to the standards set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). Ms. Rideout claims Allstate retaliated against her for complaining of the racial discrimination, failed to promote her to two

---

[8] The court is not certain plaintiff has even properly asserted a cause of action for constructive discharge but assuming *arguendo*, it is properly before the court on this motion, the court addresses it below.
[9] The court does not reach the conclusion that the Unsatisfactory Notification cannot be used to demonstrate retaliation against Ms. Rideout, and leaves that determination for the finder of facts.

manager training positions and they failed to assign her to the Kentucky market. These remaining claims are best left to the jury.

To establish a *prima facie* case of retaliation under Title VII, Rideout must show: (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action. *Mayberry v. Vought Aircraft Co. .,* 55 F.3d 1086, 1092 (5th Cir.1995) (citation omitted).

In order to make a circumstantial *prima facie* case of unlawful race discrimination in her failure to promote claim, Rideout must introduce evidence that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position was filled by someone of a different race or remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas Corp.* at 802.

If plaintiff has established the elements of her *prima facie* case, the burden of production then shifts to Allstate to produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. Once the defendant has articulated legitimate, nondiscriminatory reasons for the employment action at issue, plaintiff must present "substantial evidence" that the employer's proffered reason is a pretext for discrimination. *Laxton v. Gap, Inc.,* 333 F.3d 572, 578 (5th Cir. 2008). To show pretext on summary judgment, the plaintiff must substantiate her claim through evidence demonstrating that discrimination lay at the heart of the employer's decision. *Price v. Fed. Express Corp.,* 283 F.3d 715, 720 (5th Cir. 2002).

The courts are not in the business of analyzing hiring decisions within a company based on whether a particular individual was better qualified than a peer, especially in this case where Ms. Rideout relies on her own resume as proof she was clearly better qualified. However, when it is alleged that the environment of Allstate's Southern Region was in such a state that bigoted remarks were laughed at by fellow employees and managers, it becomes more likely the plaintiff will show pretext by proving the reasons proffered by Allstate are unworthy of credence. Allstate, through briefing, states multiple reasons why plaintiff was not promoted, or assigned to the Kentucky market, and in fact given "growth markets" and not underperforming markets. However the reasons set forth do not entitle Allstate to summary judgment, even with their burden being only of production, and not persuasion.

In light of the foregoing, the court concludes that plaintiff has established triable fact issues regarding whether she was not promoted and not given the Kentucky market due, at least in part, to her race amid the racially hostile work environment in which she was employed. Although the evidence presented to the court at this juncture does not present a strong case for the plaintiff, summary judgment is not proper. Plaintiff faces an uphill battle to prove Allstate's actions were motivated by her race or because she complained about discrimination. It appears to the court, however, that the plaintiff has claimed every action, or lack thereof, by Allstate during her six years of employment amounted to racial discrimination and that it caused adverse employment opportunities. Plaintiff has, in this instant, the benefit of being the non-moving party and therefore all inferences are in her favor. The parties have presented to the court full briefing on the issue of summary judgment and it is apparent there is still a genuine issue as to material facts that would affect the outcome of this case. Therefore, the motion for summary judgment is

DENIED in part and GRANTED as to plaintiff's claims between 2006 and 2008, and GRANTED as to plaintiff's constructive discharge claim.

    IT IS ORDERED this the 18th day of November, 2013.

                                      **/s/ MICHAEL P. MILLS**
                                      **CHIEF JUDGE**
                                      **UNITED STATES DISTRICT COURT**
                                      **NORTHERN DISTRICT OF MISSISSIPPI**